UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JUDY MORRIS, an individual,<br><br>                     Plaintiff,<br><br>     v.<br><br>MITSUBISHI MOTORS NORTH AMERICA, INC., a California corporation; MITSUBISHI MOTORS MFG; MITSUBISHI MOTORS CORPORATION, a Japanese corporation; and JOHN DOES 1-10,<br>                     Defendants. | NO:  CV-08-0396-RMP<br><br>ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT |

     This matter stems from injuries that Plaintiff incurred when the airbags in her Mitsubishi Eclipse deployed.  Before the Court are the parties' motions for partial summary judgment (Ct. Recs. 31, 38, and 67).  The motions are based on Plaintiff Judy Morris's assertions of three violations of the Washington Product Liability Act (WPLA), RCW 7.72 et seq., including (1) defective manufacturing under RCW 7.72.030(2)(a), (2) defective design under RCW 7.72.030(1)(a), and (3) failure to warn under RCW 7.72.030(1)(b)-(c).  *See* (Ct. Rec. 1 at 4-6) (Complaint).

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 1

Defendants Mitsubishi Motors Corporation and Mitsubishi Motors North America, Inc. (collectively "Mitsubishi") raised several affirmative defenses in their answers to Ms. Morris's complaint, including that (1) the Washington Product Liability Act's standard for determining whether there has been an actionable failure to warn is preempted by federal laws and regulations; (2) Plaintiff's complaint may be barred by her failure to preserve evidence; (3) Plaintiff's injuries were caused by an intervening and/or superseding cause; and (4) that Plaintiff was contributorily negligent in causing her injuries (Ct. Recs. 3, 12, and 14).

Defendants Mitsubishi move for partial summary judgment dismissing Ms. Morris's manufacturing defect, design defect, and failure to warn claims (Ct. Rec. 67). Plaintiff moves for partial summary judgment dismissal of Defendants' affirmative defense of comparative fault (Ct. Rec. 31) and of Defendants' affirmative defenses of federal preemption, intervening superseding causes, failure to preserve evidence, and the "state of the medical, scientific, and industrial knowledge and practices" were such that Defendants could not have foreseen a risk of harm from the airbags in the vehicle Defendants distributed to Plaintiff (Ct. Rec. 38).

The Court reviewed the pleadings noted in the Appendix in deciding these motions, as well as the rest of the file and pleadings in this case. Oral argument on the motions was held on August 25, 2010. Pursuant to the parties' request at the

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 2

August 25 hearing, the Court reserved ruling on the parties' partial summary

judgment motions until the parties' related motions *in limine* were fully briefed and

heard.

## I.    Factual and Procedural Background

Judy Morris is a woman in her sixties whose height is approximately 5'4", a

fact that Ms. Morris alleges is relevant to the injuries that she suffered in this case

(Ct. Rec. 46-6 at 73-74).  Ms. Morris was seriously injured in an automobile

collision in Spokane, Washington, on January 4, 2006 (Ct. Rec. 70-7 at 121).  Ms.

Morris was driving her 1996 Mitsubishi Eclipse GS-T 2-door hatchback car

("Eclipse") shortly before noon on Spokane's South Hill when her car struck a flat-

bed truck that had stopped for a bus (Ct. Rec. 70-7 at 121).  The driver of the truck

was Ronald Johnson (Ct. Rec. 71-1 at 149. 151-52).  The front end of Ms. Morris's

car rear-ended Mr. Johnson's truck and went underneath the truck's back platform

in the collision (Ct. Rec. 70-7 at 121).

Plaintiff does not dispute the defense expert's estimate that Mr. Johnson's

vehicle was traveling at a minimum speed of 8 to 19 mph and Ms. Morris's vehicle

was moving at a minimum speed of 24 to 35 mph at impact.  *See* Defense Expert

Report of Dr. Donald Struble (Ct. Rec. 70-5 at 8).  Based on the insurance

agency's claim notes, there appears to have been minimal to moderate damage to

the body of the Eclipse.[1]  In addition, the picture frames that Ms. Morris was transporting in her car at the time of the impact had unbroken glass and the frames were not shattered (Ct. Rec. 71-2 at 155).

However, the parties dispute the change in velocity of Ms. Morris's vehicle at the moment of collision and the change in velocity thresholds for deployment of the airbags in the 1996 Eclipse that Ms. Morris was driving.  The parties also dispute whether Ms. Morris applied the brakes immediately prior to the collision. Plaintiff's accident reconstruction expert, physical engineer Larry Tompkins, believes that "one or both vehicles were braking at the time of the collision" and that "the front bumper cover [of the Eclipse] was not damaged and it would have been damaged if [Ms. Morris] hadn't been braking."  Dep. of Plaintiff's Expert Larry Tomkins, May 12, 2010 (Ct. Rec. 80-3 at 16).

Defendants, by contrast, rely on the deposition testimony of Mr. Johnson to assert that Ms. Morris was not braking before rear-ending Mr. Johnson's truck.[2]

_____

[1] *Compare* (Ct. Rec. 71-2 at 155) and (70-7 at 121) (insurance agency's claim notes from a conversation with Ms. Morris's power of attorney describing the damage to the car as minimal and Ms. Morris's complaint describing the impact as mild) *with* (Ct. Rec. 70-5 at 90) (defense expert witness's description of the damage to the car based on photos).

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 4

Dep. of Ronald Johnson, Oct. 8, 2009 (Ct. Rec. 123-3 at 4).  The airbags in the Eclipse deployed in the collision.  (Ct. Rec. 70-7 at 121); (Ct. Rec. 70-5 at 90).

Ms Morris's injuries included an atlanto-occipital dislocation, in which her spinal court was severed, resulting in incomplete quadriplegia and paralysis (Ct. Rec. 70-7 at 122).  The parties agree that Ms. Morris's injuries resulted from the airbag deployment and not from the impact of the collision.  Defense Expert Report of Robert Piziali, PhD, P.E. (Ct. Rec. 46-1 at 22).  Ms. Morris's primary injuries were most likely the result of the interaction between the airbag membrane and Ms. Morris's head and neck as the airbag rapidly deployed and expanded. Defense Expert Report of Robert Piziali, PhD, P.E. (Ct. Rec. 46-1 at 22).

The main components of the Eclipse's airbag system are the airbag modules and an electronic control unit (ECU), a computer that receives data and applies the data to algorithms to determine whether the vehicle's deceleration warrants airbag deployment.  Decl. of Tsunenori Kishimoto (Ct. Rec. 51 at 2).  The parties dispute what forms of measurement Mitsubishi used in determining the threshold for airbag deployment in the Eclipse.  Plaintiff's expert Chris Caruso maintains that

---

[2] "No indication of slowing down at all.  I mean, it was a full impact; I just don't think [Ms. Morris] saw us stop at all" Dep. of Ronald Johnson, Oct. 8, 2009 (Ct. Rec. 123-3 at 4).

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 5

"Mitsubishi technical documents which were only recently produced in English confirm that during the development of this single point sensing system . . . they relied on base 'G' waveform data in order to determine the threshold for deployment."  Decl. of Plaintiff's Expert Chris Caruso (Ct. Rec. 83 at 6).  By contrast, the Defendants' witnesses assert that Mitsubishi relied primarily on the measure of the change in velocity experienced by a vehicle during a crash, "Delta-V."  Defense Expert Report of Dr. Donald Struble (Ct. Rec. 70-5 at 95-96).

Ms. Morris had an automobile insurance policy with United Services Automobile Association (USAA).  The notes for the USAA claim reflect that Ms. Morris's power of attorney, Bill Robinson, was concerned within a couple of weeks of her accident that the airbag had defectively deployed (Ct. Rec. 71-2 at 154).  On April 25, 2006, USAA sold the Eclipse to a third party for salvage. (Ct. Rec. 49, Exh. K, at 148; Ct. Rec. 49, Exh. L, at 153).  The third party purchaser replaced the hood over the engine, the left fender, the radiator core support, the airbag modules for the driver-side and passenger-side airbags, and the ECU (Ct. Rec. 49, Ex. O, at 185-88).  Neither party in this litigation had an opportunity to inspect Ms. Morris's car in its original post-accident state.

One of Ms. Morris's claims hinges on whether Mitsubishi failed to warn of the airbag dangers.  The Eclipse owner's manual contained the following warning

on the "Supplemental Restraint System (SRS)" page of the "Seat and seat belt" section:

> IT IS VERY IMPORTANT TO BE PROPERLY SEATED EVEN WITH AN AIR BAG.
>
> Air bags inflate very fast, and with great force.  If the driver and front passenger are not properly seated, the air bag may not protect you properly, and could cause injury when it inflates, So:
> (1)    Before driving, adjust the driver's seat as far back as possible while still maintaining complete control of the car.
> (2)    Before driving, adjust the front passenger seat as far back as possible.
> (3)    With seat belts properly fastened, the driver and front passenger should sit upright with backs against the seat backs.
> (4)    Do not lean head or chest close to the steering wheel or instruments panel.

(Ct. Rec. 80-1 at 7) (page 49 of Eclipse owner's manual; the warning is in a shaded box bearing a symbol of an exclamation point in a triangle).

The next page of the owner's manual contains the following information under the heading "Air bag system":

> . . . The air bags are designed to inflate only in certain moderate to severe frontal collisions.  The air bags are not designed to inflate in certain lower-speed frontal collisions, in roll-overs, or in side or rear impact collisions.  The air bags also may not inflate in certain frontal collisions [sic], even though the car may be severely damaged . . .

(Ct. Rec. 80-1 at 8) (page 50 of Eclipse owner's manual).

The sun visor of the Eclipse bore the warning:

> CAUTION

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 7

TO AVOID SERIOUS INJURY:

For maximum safety protection in all types of crashes, you must always wear your safety belt.
Do not install rearward-facing child seats in any front passenger seat position.
Do not sit or lean unnecessarily close to the air bag.
Do not place any objects over the air bag or between the air bag and yourself.
See the owner's manual for further information and explanations.

49 CFR § 571.208(b)(1) (1996).

## II.    Analysis

### *Jurisdiction and Summary Judgment Standard*

This Court exercises jurisdiction pursuant to 28 U.S.C. § 1332 and, therefore, applies Washington state substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . . " *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant

unwarranted consumption of public and private resources." *Celotex*, 477 U.S. at 327.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party must demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp.*, 477 U.S. at 325. The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)).

A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). At summary judgment, the court draws all reasonable inferences in favor of the nonmoving party. If the nonmoving party produces evidence that contradicts evidence produced by the moving party, the court must assume the truth of the nonmoving party's evidence with respect to that fact. *T.W. Elec. Service, Inc.*, 809 F.2d at 631. The evidence presented by both the moving and non-moving parties must be admissible. Fed.R.Civ.P. 56(e). Furthermore, the court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

***Defendants' Motion for Partial Summary Judgment (Ct. Rec. 67)***

As a preliminary matter, Defendants submitted numerous objections to the evidence submitted by Plaintiff in her response to the Defendants' motion for partial summary judgment.  The Court deferred decision on all of the summary judgment motions until the evidentiary objections were more fully briefed and heard by the Court as motions *in limine*.  Having now heard those motions *in limine* and rendered decisions on the motions relevant to Defendants' summary judgment motion, Ct. Recs. 210, 211, and 213, the Court proceeds to the merits of the summary judgment motions.

## **Defendants' Motion for Summary Judgment on Plaintiff's Manufacturing Defect Claim**

The Washington Product Liability Act (WPLA), chapter 7.72 RCW, holds manufacturers strictly liable for injuries that are proximately caused by "the fact that the product was not reasonably safe in construction or not reasonably safe because it did not conform to the manufacturer's express warranty or to the implied warranties under Title 62A RCW."  RCW 7.72.030(2).

Defendants maintain that they are entitled to summary judgment on Ms. Morris's manufacturing and design defect claims because Ms. Morris is unable to show that the airbag in her Eclipse was manufactured in a way that deviated from its design or that it malfunctioned during her collision.  Defendants argue that the

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 10

Plaintiff wrongfully asserts that average deceleration is the measurement that should be used to determine airbag deployment thresholds (Ct. Rec. 85 at 7). Defendants dispute Plaintiff's contention that Mitsubishi testing established that the Eclipse airbag should not deploy in an accident that involves a change in velocity (Delta V) equal to or less than 12.5. Defendants contend that the 12.5 mph figure cited by Plaintiff is based on flawed and corrupted data found in a MELCO Technical Bulletin.

To support its contention regarding flawed and corrupted data, Mitsubishi cites only to its own witness, Mr. Kishimoto, a manager in the Safety Engineering Department. *See Reply Decl. of Tsunenori Kishimoto* (Ct. Rec. 90 at 5). Mr. Kishimoto states in his declaration that "MMC has confirmed that the Delta V of 12.5 mph listed in MELCO Technical Bulletin SBA-2321, which is more than 50% of the impact speed, is incorrect due to the test data being corrupted," without offering any citation or explanation to substantiate how the data was corrupted.[3] *Reply Decl. of Tsunenori Kishimoto* (Ct. Rec. 90 at 5).

_____

[3] Mr. Kishimoto states: "Further, Plaintiff alleges that Mitsubishi ran an Eclipse in to a flat rigid frontal barrier at 8 mph and a 12.5 mph Delta V was generated. This is reported in the final MELCO simulation report. However, every knowledgeable person and competent engineer knows and understands that it is not possible to generate a Delta V in an 8 mph test of 12.5 mph. Nevertheless, to the extent

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In contrast, Plaintiff submitted lengthy declarations from experts refuting Defendants' contentions.  This Court previously found that Plaintiff's experts' opinions that the airbag in the Eclipse deployed improperly or late in Ms. Morris's accident meet the *Daubert*[4] standard for admissibility (Ct. Rec. 213).

Weighing the evidence in the light most favorable to the Plaintiff, the nonmoving party, Plaintiff's expert opinions refuting Mr. Kishimoto's statements create a material question of fact as to whether the airbag in Ms. Morris's Eclipse "was not reasonably safe in construction or not reasonably safe because it did not conform to the manufacturer's express warranty or to the implied warranties under Title 62A RCW."  RCW 7.72.030(2); (Ct. Rec. 160) (Declaration of Dr. Carley Ward in opposition to motions to exclude); (Ct. Rec. 161) (Declaration of Chris Caruso in opposition to motions to exclude); (Ct. Rec. 162) (Declaration of Larry Tompkins in opposition to motions to exclude).

---

Plaintiff may be referring to MELCO Technical Bulletin SBA-2321, Plaintiff is simply wrong. While that bulletin lists the Delta V of an 8 mph frontal barrier test as 12.5 mph, the Delta V reported was based on corrupted data.  MMC has confirmed that the Delta V of 12.5 mph listed in MELCO Technical Bulletin SBA-231, which is more than 50% of the impact speed, is incorrect due to the test data being corrupted.  Accordingly, that test data is never used" (Ct. Rec. 90 at 5 - 6).

[4] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 12

Therefore, the Court **DENIES** summary judgment for Defendants on Plaintiff's manufacturing defect claim, because there are genuine issues of material fact that render summary judgment inappropriate.

**Defendants' Motion for Summary Judgment on Plaintiff's Design Defect Claim**

A plaintiff alleging a design defect under the WPLA must show that (1) a manufacturer's product (2) was not reasonably safe as designed, and (3) caused the plaintiff's harm.  RCW 7.72.030; *Thongchoom v. Graco Children's Products, Inc.*, 117 Wn. App. 299, 304 (Wash. App. Div. 3 2003), *review denied by* 151 Wn.2d 1002 (Wash. 2004).

A plaintiff may show that a product was not reasonably safe as designed at the time of manufacture through either of two tests:  the risk-utility test, or the consumer expectations test.   The risk-utility test weighs the likelihood of the harm suffered by the plaintiff, or of a similar harm, against the burden on the manufacturer to design a non-harmful product that still fulfills the product's intended purpose.  RCW 7.72.030(1)(a); *Higgins v. Intext Recreation Corp.*, 123 Wn. App. 821, 828-29 (Wash. App. Div. 3 2004).  The consumer expectations test requires a showing that the product is more dangerous than the ordinary consumer would contemplate.  RCW 7.72.030(3); *Higgins*, 123 Wn. App. at 828.

Mitsubishi maintains that Ms. Morris will not be able to show that the deployment of the airbag in the Eclipse was "not reasonably safe" by design because Ms. Morris's "own experts agree that Mitsubishi's deployment thresholds were reasonable at the time the 1996 Eclipse was designed and manufactured." Defendants' Memorandum (Ct. Rec. 68 at 14).

Ms. Morris responds that the airbag deployed unnecessarily, too forcefully, and too late on account of the following design flaws, as identified by her airbag sensing expert Chris Caruso, who offered the following observations and opinions:

1.    An excessively low airbag deployment threshold, particularly for seat belted occupants like Judy Morris.
2.    Defective crash and "safing" sensors that are overly sensitive to low speed impacts.
3.    Crash sensors that deploy the airbag too late in the crash event, after the occupant has been thrust forward due to collision forces including pre-impact breaking.
4.    No shoulder strap pretensioners to yank the slack out of the shoulder strap before the airbag deploys.
5.    The failure to employ a front crush zone sensor in this airbag sensing system led to the failure of the frontal airbag by making the system overly sensitive to insure timely pole impact deployments, thus resulting in inadvertent deployments under other, untested crash conditions (including offset deformable barrier collisions).
6.    The failure to employ a front crush zone sensor in this airbag crash sensing system led to the failure of the frontal airbag by making the system deploy late under other, untested crash conditions.
7.    The inability of the Airbag SRS module to perform as a single point sensing system under all foreseeable conditions for a vehicle of this low profile design leads to a fundamental defect in the system design.
8.    The basic design and implementation of the frontal impact crash sensing algorithm and calibrations were ineffective in this crash

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 14

condition and led to the failure of the frontal airbags by deploying late and inadvertently.

9.    Mitsubishi's crash testing and development program for this vehicle failed to adequately assess collisions across real world conditions represented by this crash event.

10.    The determination of the airbag deployment thresholds were erroneously established based on inadequate testing and development. The risk of airbag induced injury at these unreasonably low thresholds outweighed the benefit provided by the airbag at these low speeds.

11.    Mitsubishi's failure to develop a DFMEA for the new crash sensing system led directly to inadequate engineering testing and analyses which would have identified this potential risk and resulted in a different crash sensing system design for the 1996 Mitsubishi Eclipse including the addition of frontal crush zone sensors and higher deployment thresholds.

Decl. of Chris Caruso (Ct. Rec. 81 at 11-12).

Viewing the evidence in the light most favorable to Ms. Morris, the nonmoving party, Mr. Caruso's statements raise genuine issues of material fact as to whether the airbag deployment parameters were reasonably safe as designed at the time that the Eclipse was manufactured. Therefore, the Court **DENIES** summary judgment for Defendants on Plaintiff's design defect claim.

**Defendants' Motion for Summary Judgment on Plaintiff's Failure to Warn Claim**

A plaintiff bringing a failure to warn claim under the WPLA must show that her "harm was proximately caused by the negligence of the manufacturer in that the product was . . . not reasonably safe because adequate warnings or instructions were not provided." RCW 7.72.730(1).

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 15

Mitsubishi maintains that Ms. Morris's state law failure to warn claim conflicts with, and thus is preempted by, federal law and regulations, specifically by Federal Motor Vehicle Safety Standard ("FMVSS") 208.  They argue that FMVSS 208 mandated the specific language and placement of the warning labels regarding the airbag system in the Eclipse, so any purported duty to include different or additional in-vehicle airbag warnings is preempted (Ct. Rec. 68 at 18-19).

The Washington Product Liability Act also provides for liability on a failure to warn theory:

> A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided.

RCW 7.72.030(1).

There is a preemption clause in the National Traffic and Motor Vehicle Safety Act of 1966 ("Safety Act"), 80 Stat. 718, 15 U.S.C. § 1381 *et seq.* (1988 ed.) (recodified without substantive change at 49 U.S.C. §§ 30101 *et seq.* (2006 ed., and Supp. III)):

> (b) Preemption
>
> (1)When a motor vehicle safety standard is in effect under this chapter, a State or a political subdivision of the State may prescribe or continue in effect a standard applicable to the same aspect of performance of

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 16

a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter.

   (2) A State may enforce a standard that is identical to a standard prescribed under this chapter [49 U.S.C. §§ 30101, et seq.]

49 U.S.C. § 30103(b)(1) & (2) (1996).[5]

   The Safety Act also contains a savings clause, which provides that "[c]ompliance with a motor vehicle safety standard prescribed under this chapter [49 USC §§ 30101 *et seq*.] does not exempt a person from liability at common law."  49 U.S.C. § 30103(e) (1996).[6]

   The savings clause, when read with the preemption clause, "preserves those actions that seek to establish a greater safety than minimum safety achieved by a federal regulation intended to provide a floor."  *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 868, 120 S.Ct. 1913 (2000).  That is, when a regulation's history, the enacting agency's contemporaneous explanation of the regulation, and available interpretations of the regulation seek "to maintain manufacturer choice in order to further significant regulatory objectives," the regulation implicitly

---

[5] The language of the preemption clause, 49 U.S.C. § 30103(b), is identical in the 2011 version of the statute.

[6] The language of the savings clause, 49 U.S.C. § 30103(e), is identical in the 2011 version of the statute.

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 17

preempts state tort actions that would penalize a manufacturer for making one of the available choices. *Williamson v. Mazda Motor of America, Inc.*, No. 08-1314, 2011 WL 611628, at \*9 (U.S. Feb.23, 2011).

A tort claim may proceed, even if it may have the effect of restricting the manufacturer's choice, when a Court finds that the choice allotted to manufacturers by a regulation is *not intended* to further a significant regulatory objective. *Williamson,* 2011 WL 611628 at \*9. In this case, Defendants contend that at the time of Plaintiff's vehicle's manufacture "the specific language and placement of the in-vehicle warnings regarding the airbag system were mandated by FMVSS 208." Defendants' Memorandum (Ct. Rec. 68 at 18). Therefore, the Court must ascertain whether the state rule would impede or conflict with the agency's regulatory objective.

The National Highway Transportation Safety Agency Administration (NHTSA) was charged with promulgating federal motor vehicle safety standards under the Safety Act, and FMVSS is one of those standards. The version of FMVSS 208 that was in place in 1996 provided in part the following labeling requirement for motor vehicle manufacturers:

> "(b) Label on sun visor above front outboard seating positions equipped with inflatable restraint.
>
> (1) Each vehicle manufactured on or after September 1, 1994, shall comply with either S4.5.1(b)(1)(i) or S4.5.1(b)(1)(ii), except that the word "WARNING" may be used instead of "CAUTION".

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 18

(i) Each front outboard seating position that provides an inflatable restraint shall have a label permanently affixed to the sun visor for such seating position on either side of the sun visor, at the manufacturer's option. Except as provided in S5.4.1(b)(1) and S4.5.1(b)(3), this label shall read:

CAUTION
TO AVOID SERIOUS INJURY:
For maximum safety protection in all types of crashes, you must always wear your safety belt.
Do not install rearward-facing child seats in any front passenger seat position.
Do not sit or lean unnecessarily close to the air bag.
Do not place any objects over the air bag or between the air bag and yourself.
See the owner's manual for further information and explanations.

49 CFR § 571.208(b)(1) (1996).

The Safety Act was enacted "to reduce traffic accidents and death and injuries to persons resulting from traffic accidents." 49 U.S.C. § 30101. Similarly, the NHTSA, through FMVSS 208, sought "to reduce the number of deaths of vehicle occupants, and the severity of injuries, by specifying vehicle crashworthiness requirements in terms of forces and accelerations measured on anthropomorphic dummies in test crashes, and by specifying equipment requirements for active and passive restraint systems." 49 CFR 571.208 (S2. Purpose).

Defendants rely on *Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000), as support for implied conflict preemption. In *Geier*, the Secretary of

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 19

Transportation promulgated a safety regulation that required car manufacturers to include passive restraint systems in a percentage of their cars built in or after 1987. The regulations did not mandate a particular type of passive restraint system; the car manufacturers could choose which product to install. *Geier*, 529 U.S. at 886.

Despite wearing her seatbelt, the plaintiff in *Geier* was seriously injured when she drove her Honda Accord into a tree. She sued Honda under state tort law arguing that her car was negligently and defectively designed because it lacked a driver's-side airbag. The Supreme Court held that the lawsuit was preempted because states were not free to deem certain passive restraint systems unsafe despite the Secretary of Transportation's decision that those same systems were safe. *Geier*, 529 U.S. at 886.

Plaintiff asserts that NHTSA specifically declined to establish any precise language that must appear in the owner's manual regarding airbag deployment and that manufacturers were free to include airbag warnings in the vehicle other than the sun visor. *See* 60 Fed. Reg. 27233, et seq. (stating that NHTSA did not propose specific language for the owner's manual in the context of information about airbag cutoff devices); 57 Fed. Reg. 46551 (NHTSA's labeling requirements allowed manufacturers to select the specific language to include in owner's manuals regarding the vehicle's airbag system).

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 20

Plaintiff argues that Mitsubishi's label advising "not to sit or lean unnecessarily close to the airbag" did not adequately warn the consumer that airbags could kill, maim, or even decapitate passengers (Ct. Rec. 78 at 29). Plaintiff also contends that "NHTSA went out of its way to state in the final rule [in 1995] that vehicle manufacturers . . . were free to post additional, and different information 'elsewhere' in the vehicle." (Ct. Rec. 78 at 29).  However, the exhibit to which Plaintiff cites in making this assertion, 62 Fed. Reg. 62406, does not support that proposition, and the majority of this section of the Federal Register concerns the use of on-off switches in vehicles starting in 1998.  *See* (Ct. Rec. 60 at 11-19, Ex. C).

In a post-*Geier* Sixth Circuit case, *Fisher v. Ford Motor Company*, 224 F.3d 570 (6th Cir. 2000), cited by Defendants, the plaintiff brought a state law failure to warn claim proposing that the car manufacturer should have placed additional warning labels with different language than FMVSS 208, such as language warning about increased risk from airbags to drivers of short stature.  The Sixth Circuit held that FMVSS 208 implicitly preempted the plaintiff's claim because NHTSA "thought of its warning language as not simply the minimum, but as the sole language it wanted on the subject" and "feared 'information overload,' i.e., that additional warnings would district from the warnings it had determined were critical, leading consumers not to focus properly on the latter."  *Fisher*, 224 F.3d at

574; *see also* 57 Fed. Reg. 46551[7]   The Court declined to reach the question of whether additional, identical labels placed elsewhere than the visor would also be preempted.  *Fisher*, 224 F.3d at 574.

Following the logic set out in *Fisher,* the Court is persuaded that NHTSA was concerned about "information overload" and finds that FMVSS 208 preempts Ms. Morris's failure to warn claim to the extent that Ms. Morris asserts that other warnings such as those relating specifically to drivers of short stature should have been placed in the Eclipse.  *See Fisher*, 224 F.3d at 574.

As for warnings that may not conflict with FMVSS 208, Ms. Morris does not offer a developed theory or evidence, supporting her failure to warn claim, by

---

[7] "As indicated above, the agency issued its labeling proposal in response to a petition for rulemaking submitted by AAMA. That organization stated that it strongly supports NHTSA's proposal of a requirement that a label be permanently affixed to the sun visor for each front outboard seating position equipped with an air bag, and the agency's goal of ensuring that the text of the label *achieves the optimal balance between the need to inform the public about the types of occupant behavior and uses that may reduce the effectiveness of air bags and the equally important need of avoiding a label with added language that would potentially create an information overload*." 58 Fed. Reg. 46551 (emphasis added).

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 22

offering a scenario in which a different warning than those included on the visor or in the owner's manual would have prevented her injuries. Nor does she present other evidence supporting that the absence of any particular information proximately caused her injuries in the collision. Plaintiff has not met her burden of designating specific facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. Therefore, the Court grants summary judgment dismissal of Plaintiff's failure to warn claim.

### *Plaintiff's Motion for Partial Summary Judgment on Defendants' Affirmative Defense of Comparative Fault (Ct. Rec. 31)*

Ms. Morris maintains that this is an "enhanced injury" product defects case because she seeks to recover for the product defects that caused or enhanced injuries in the course of or following the collision even though the alleged defects did not cause or contribute to the collision itself. *See Baumgardner v. American Motors Corp.*, 83 Wn.2d 751 (1974).

Plaintiff argues that comparative fault is not at issue for enhanced injuries. Plaintiff contends that since Plaintiff could not have "caused" the enhanced injuries she could not be "at fault" for purposes of the comparative fault doctrine, as set out in RCW 4.22.015. Nor could Plaintiff be a liable party under the contribution statute, RCW 4.22.040(1), which provides a right of contribution only upon an

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 23

indivisible claim for the same injury.  Defendants respond that a plaintiff's comparative fault is still relevant in a crashworthiness case.

Washington's contributory fault statutory scheme defines "fault" as follows:

'Fault' includes acts or omissions, including misuse of a product, that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability or liability on a product liability claim.  The term also includes breach of warranty, unreasonable assumption of risk, and unreasonable failure to avoid an injury or to mitigate damages.  Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.

RCW 4.22.015.

As defendants note, the Washington State Supreme Court has stated that "[t]he statutory definition of 'fault' in RCW 4.22.015 is quite broad and is not limited to manufacturers and product sellers." *Hiner v. Bridgestone/Firestone,* 138 Wn.2d 248, 260 (Wash. 1999).  A Washington Court of Appeals has taken a further step holding specifically that "the Legislature has determined that the comparative fault doctrine shall apply to all actions based on "fault," including strict liability and product liability claims." *Lundberg v. All-Pure Chemical Co.*, 55 Wn. App. 181, 186 (Wash. App. Div. 1 1989) (failure to warn case).  Moreover the leading enhanced injury case in Washington state, upon which Plaintiff relies, is silent on the specific issue of whether plaintiff's comparative fault is at issue in an enhanced injury situation but found that the trial court had erroneously

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 24

presupposed "that all of the injuries were caused by the wrongful acts of both the individual defendant and defendant manufacturer" in that case. *Baumgardner*, 83 Wn.2d at 760.

Defendants submit the expert report of Dr. Robert Piziali who concludes that Ms. Morris was likely inattentive and out of proper seating position at the time of the accident and that had she not been bending down to pick something off of the floor, she likely would have been properly seated and would not have been severely injured (Ct. Rec. 46-1 at 27).

Another defense expert testified as to his theory that Ms. Morris was not braking at the time of the collision. Dep. of Donald Struble, PhD, May 27, 2010 (Ct. Rec. 46-2 at 40-45). The driver of the truck with which Ms. Morris's car collided also testified that Ms. Morris's vehicle did not appear to slow down prior to impact. Dep. of Ronald Johnson, Oct. 8, 2009 (Ct. Rec. 46-4 at 63-64). Defendants also submit the medical notes from one of Ms. Morris's doctors, Dr. Elizabeth Ho, reporting that Ms. Morris "bent down while driving and ran into a flatbed truck" (Ct. Rec. 46-6 at 73). Dr. Ho's notes do not make clear whether Ms. Morris reported to Dr. Ho that she was bent down at the time of the accident or whether Dr. Ho inferred that Ms. Morris was bent forward because of the nature of her injuries.

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 25

Viewing this evidence in the light most favorable to the nonmoving party, the Court finds that there remains a genuine question of material fact as to whether Ms. Morris's actions contributed to her enhanced injuries for purposes of the comparative fault doctrine.  Therefore, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment on Defendants' Affirmative Defense of Comparative Fault.

*Plaintiff's Motion for Partial Summary Judgment on Defendants' Affirmative Defenses of Federal Preemption, Product Misuse, Intervening Superseding Causes, and Failure to Preserve Evidence (Ct. Rec. 38)*

As a preliminary matter, the Court notes that Defendants withdrew their affirmative defenses relating to the "state of the medical, scientific, and industrial knowledge and practices" at all times material to Plaintiff's claims and to intervening and superseding causes.  *See* Defendants' Memorandum in Opposition (Ct. Rec. 48 at 4, notes 3 and 4).  The portion of Plaintiff's motion seeking summary judgment dismissal of these claims is, therefore, **GRANTED**.

*Federal Preemption*

Second, the Court determined in its analysis of Defendants' summary judgment motion (Ct. Rec. 67), *supra,* that Plaintiff's failure to warn claim is implicitly preempted by FMVSS 208.  Given that the Court grants in part Defendants' partial summary judgment motion with respect to preemption, the

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 26

Court **DENIES AS MOOT** the portion of Plaintiff's motion that requests

dismissal of the preemption affirmative defense.

### *Product Misuse*

As a third preliminary matter, the affirmative defense of product misuse is

not a separate defense from comparative fault, which the Court already determined

shall survive summary judgment in this case.  *See* RCW 4.22.015 (defining fault as

including acts or omissions, including the misuse of a product, that are negligent or

reckless toward the person or property of the actor or others).  The portion of

Plaintiff's motion that seeks to dismiss the affirmative defense of product misuse is

accordingly **DENIED AS MOOT**.

### *Failure to Preserve Evidence*

Defendants contend that Plaintiff's sale of the car prior to their ability to

examine the air bags or damaged vehicle is spoliation of evidence.  Plaintiff argues

that there is no discovery that has been disclosed to support this affirmative

defense (Ct. Rec. 40 at 15-16).

Where relevant evidence that "would properly be a part of a case is within

the control of a party [in] whose interests it would naturally be to produce it and he

fails to do so, without satisfactory explanation, the only inference which the finder

of fact may draw is that such evidence would be unfavorable to him."  *Henderson

v. Tyrell*, 80 Wn. App. 592, 606-07 (Wash. App. Div. 3 1996) (citing *Pier 67, Inc.*

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 27

1
2
3
4
5

*v. King County*, 89 Wn.2d 379, 384-85 (Wash. 1977)).  The "potential importance or relevance of the missing evidence" and "the culpability or fault of the adverse party" are both relevant factors in determining whether this rebuttable presumption will be applied to missing evidence.  *Henderson*, 80 Wn. App. at 607.

6
7
8
9
10
11
12
13
14
15
16
17
18
19

Defendants offer sufficient evidence to raise a material question of fact as to Plaintiff's culpability regarding the missing evidence and the potential importance or relevance of the missing components of the Eclipse.  That evidence includes the insurance company's notes recording that Mr. Robinson, Ms. Morris's power of attorney, alleged the defectiveness of the airbag and Mitsubishi's potential liability in a phone conversation with an insurance company representative before the Eclipse was sold, the deposition testimony of the buyer of the salvaged Eclipse regarding the replacement of the airbag modules and ECU after the collision, and the testimony of Mr. Kishimoto regarding the type and importance of data stored on the ECU.  (Ct. Rec. 71-2 at 154-55); (Ct. Rec. 49-15 at 187); (Ct. Rec. 51).

20
21
22
23
24
25
26
27
28

Viewing the evidence in the light most favorable to the Defendants, the nonmoving party, the Court finds that Defendants' submitted evidence raises genuine issues of material fact as to whether Plaintiff failed to preserve evidence when she allowed her insurance company to sell the car prior to its being examined.  Therefore, the Court **DENIES** Plaintiff's motion for partial summary judgment of Defendants' affirmative defense of failing to preserve evidence.

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 28

### III.    Conclusion

**IT IS HEREBY ORDERED:**

**1.**      Plaintiff's Motion for Partial Summary Judgment on Defendants' Comparative Fault Affirmative Defense (**Ct. Rec. 31**) is **DENIED**.

**2.**      Plaintiff's Motion for Partial Summary Judgment on Defendants' Affirmative Defenses of Federal Preemption, Product Misuse, Intervening Superseding Causes, and Failure to Preserve Evidence (**Ct. Rec. 38**) is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED AS MOOT IN PART** as follows:

> **a.  GRANTED** as to affirmative defense relating to the "state of the medical, scientific, and industrial knowledge and practices" at all times material to Plaintiff's claims and their affirmative defense relating to intervening and superseding causes;
>
> **b.  DENIED AS MOOT** as to product misuse;
>
> **c.  DENIED AS MOOT** as to federal preemption; and
>
> **d.  DENIED** as to failure to preserve evidence.

**3.**      Defendants' Motion for Partial Summary Judgment on Plaintiff's Claims Related to the Propriety of Airbag Deployment, Airbag Deployment Timing, and Failure to Warn (**Ct. Rec. 67**) is **DENIED IN PART** and **GRANTED IN PART** as follows:

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 29

    **a. DENIED** as to Plaintiff's design defect and manufacturing defect claims; and

    **b. GRANTED** as to Plaintiff's failure to warn claim due to federal preemption.

    The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

    **DATED** this 23rd day of March, 2011.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

**Appendix A**

This Court has reviewed: the Defendants' Motion for Partial Summary Judgment on Plaintiff's Claims Related to the Propriety of Airbag Deployment, Airbag Deployment Timing, and Failure to Warn Claims (Ct. Rec. 67), supporting memorandum (Ct. Rec. 68), declaration (Ct. Rec. 69), statement of facts (Ct. Recs. 70 & 71), Plaintiff's statement of facts in opposition (Ct. Rec. 79), declaration and exhibits in opposition (Ct. Rec. 79), expert declarations (Ct. Recs. 81, 82, & 83), Defendants' reply (Ct. Rec. 85), supporting declaration and exhibits (Ct. Rec. 87), and supplemental expert declarations (Ct. Rec. 89 & 90), Defendants' evidentiary objections accompanying their reply (Ct. Rec. 86), Plaintiff's response to

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 30

Defendants' evidentiary objections (Ct. Rec. 95), supporting declaration and exhibits (Ct. Rec. 96) and supplemental expert declaration and exhibits (Ct. Rec. 98); Plaintiff's Motion for Partial Summary Judgment on Defendants' Affirmative Defense of Comparative Fault (Ct. Rec. 31), supporting memorandum (Ct. Rec. 32), declarations and exhibits (Ct. Recs. 35 and 37), Defendants' response (Ct. Rec. 42), declarations opposing the motion (Ct. Recs. 43, 44, and 45), Defendants' statement of facts in opposition to the motion and accompanying exhibits (Ct. Rec. 46), Defendants' evidentiary objections to Plaintiff's motion (Ct. Rec. 47), Plaintiff's response to Defendants' evidentiary objections (Ct. Rec. 55), Plaintiff's reply (Ct. Rec. 56), and supporting declaration (Ct. Rec. 58); and the Plaintiff's Motion for Partial Summary Judgment on Defendants' Affirmative Defenses of Federal Preemption, Product Misuse, Intervening Superseding Causes, and Failure to Preserve Evidence (Ct. Rec. 38), supporting declaration and exhibits (Ct. Rec. 39), supporting memorandum (Ct. Rec. 40), Defendants' response (Ct. Rec. 48), statement of facts opposing the motion and accompanying exhibits (Ct. Rec. 49), declarations opposing the Plaintiff's motion (Ct. Recs. 51, 52, and 53), and Plaintiff's reply (Ct. Rec. 74), supporting declarations and exhibits (Ct. Recs. 60 and 75).

ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT – 31